## BEACH v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
May 23, 1927.

No. 7322.

1. Criminal law ⚖➡1159(5)—Jury finding, on conflicting evidence, that money received by official of Veterans' Bureau was bribe, held conclusive on appellate court (Act Aug. 9, 1921 [42 Stat. 147]; Criminal Code, § 117 [Comp. St. § 10287]).

Finding of jury, on conflicting evidence, that transaction in which chairman of district board of appeals of United States Veterans' Bureau, who was also legal adviser to district manager under Act Aug. 9, 1921 (42 Stat. 147), received money from applicant for compensation for disability incurred in military service of United States during World War, was a bribe, constituting an offense under Criminal Code, § 117 (Comp. St. § 10287), and not merely a loan, *held* conclusive on Circuit Court of Appeals.

**2. Bribery ⊗➾1(1)—Claim for compensation for disability incurred in World War held pending, or might by law be made pending, before defendant when he received bribe (Criminal Code, § 117 [Comp. St. § 10287]).**

Where applicant's claim for compensation for disability incurred in military service of United States during the World War was pending and undecided before rating board of medical division, when chairman of district board of appeals of the Veterans' Bureau, who was also legal adviser to manager of district, solicited and received money from applicant, money was received while applicant's claim was a question or matter, cause, or proceeding pending, or which might by law be made pending, before defendant in his official capacity, in regard to which a bribe could influence his action in that capacity, within Criminal Code, § 117 (Comp. St. § 10287).

**3. Bribery ⊗➾6(1)—Indictment charging that defendant solicited bribe from applicant for compensation for disability incurred in military service or held to charge crime (Act Aug. 9, 1921 [42 Stat. 147]; Criminal Code, § 117 [Comp. St. § 10287]).**

Indictment charging that, at time defendant solicited bribe from applicant for compensation for disability incurred in military service of United States during World War, applicant's claim for compensation was pending and might be brought before defendant in his official capacity, by virtue of the authority vested in him as legal adviser to and chairman of the district board of appeals of the United States Veterans' Bureau, under Act Aug. 9, 1921 (42 Stat. 147) *held* sufficient to charge a crime under Criminal Code, § 117 (Comp. St. § 10287), as against contention that it failed to allege that the approving or disapproving of the application was or could be within the defendant's official duties.

**4. Criminal law ⊗➾1032(1)—Technical objection to sufficiency of indictment, raised for first time in appellate court, held too late.**

Technical and unsubstantial objection to legal sufficiency of indictment, not called to trial court's attention by demurrer, motion, or otherwise, *held* not to warrant reversal of conviction by appellate court.

**5. Criminal law ⊗➾1169(10)—Admission in evidence of affidavits held not prejudicial, where material statements therein were testified to at trial by affiants.**

Admission in evidence of affidavits *held* not prejudicial error, where all substantial statements in affidavits were testified to at trial by affiants.

**6. Criminal law ⊗➾1169(1)—Admitting letter suspending defendant as legal adviser to manager of Veterans' Bureau and his answer thereto held not prejudicial (Criminal Code, § 117 [Comp. St. § 10287]).**

Admission in evidence of a letter suspending defendant from duty as legal adviser to district manager of United States Veterans' Bureau on charges that defendant had accepted bribe, in prosecution under Criminal Code, § 117 (Comp. St. § 10287), and defendant's answer thereto, in which he described the transaction, *held* not prejudicial error, where court ruled out all of manager's letter except the heading and paragraph stating that defendant was suspended.

**7. Bribery ⊗➾10—In prosecution against official of Veterans' Bureau for taking bribe, admission in evidence of memoranda and letters to show he displayed special interest in applicant's case, held not error (Criminal Code, § 117 [Comp. St. § 10287]; Act Aug. 9, 1921 [42 Stat. 147]).**

In prosecution under Criminal Code, § 117 (Comp. St. § 10287), against chairman of the district board of appeals of the United States Veterans' Bureau, who was also legal adviser of the district manager under Act Aug. 9, 1921 (42 Stat. 147), for receiving money with intent to have his decision on claim for compensation for disability resulting from military service influenced thereby, admission in evidence of memoranda and a letter from defendant relating to another and separate pending claim of claimant, for purpose of proving that defendant displayed a special interest in claimant's applications, *held* not error.

In Error to the District Court of the United States for the District of Minnesota; John F. McGee, Judge.

Alfred H. Beach was convicted of receiving a bribe, with intent to have his decision or action respecting matter pending or which may come before him in his official capacity influenced thereby, and he brings error. Affirmed.

E. H. Foster, of Amarillo, Tex., for plaintiff in error.

Lafayette French, Jr., U. S. Atty., of St. Paul, Minn., for defendant in error.

Before SANBORN and BOOTH, Circuit Judges, and KENNAMER, District Judge.

WALTER H. SANBORN, Circuit Judge. The defendant below was indicted, tried, and convicted of the offense denounced by section 117 of the Criminal Code (section 10287 of the Compiled Statutes). So far as relevant to the questions in this case that section provides:

"Whoever, being an officer of the United States, or a person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or office of the government * * * shall ask, accept, or receive any money, or any contract, promise, undertaking, obligation, gratuity, or security for the payment of money * * * with intent to have his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity * * * influenced thereby, shall be fined not more than three times the amount of

money or value of the thing so asked, accepted, or received," etc.

The defendant Beach was from April, 1922, until October 15, 1923, chairman of the board of appeals of the United States Veterans' Bureau of district No. 10 and the legal adviser of the district manager of that district under chapter 57 of volume 42, part 1, of the United States Statutes at Large (page 147). The indictment in this case charged that on November 21, 1922, while he was acting in his official capacity as such chairman and legal adviser, he asked for and received from one Percy J. Cuff $300, with the intent that it should influence him in his official capacity in approving or disapproving of the application of Cuff for compensation for disability alleged by him to have been incurred by him in the military service of the United States during the World War, which application and the payment therefor were then pending before him, and might be brought before him, in his official capacity as such chairman and legal adviser.

At the trial these facts were satisfactorily proved: Cuff had a claim for compensation for disability resulting from his military service, which was pending for some months prior to November 21, 1922, before the rating section of the medical division of the tenth district, the section or division which had jurisdiction to determine in the first instance the amount that should be allowed for Cuff's disability. On November 21, 1922, that medical division adjudged that he should be allowed 15 per cent. of the amount fixed for total disability from the date of his discharge to June 22, 1921, and the amount allowable for temporary permanent disability for the time subsequent to June 22, 1921. By this adjudication there became at that time due him from the United States $1,614.80. The board of appeals of the district had jurisdiction to review this adjudication, either on the application of Cuff, on the ground that the amount of the 15 per cent. was too low, or on the appeal of the district or its manager, on the ground that the amount allowed him was too high. On the next day after this allowance, November 22, 1922, Cuff called on the defendant, and he introduced him to the disbursing officer of the district, who paid Cuff $1,614.80. Cuff paid $300 of his money to one Newkirk, and Newkirk paid $235 of it to the defendant Beach. Newkirk had been an intimate acquaintance of the defendant and a friend of Cuff. At Newkirk's instance, the defendant had caused Cuff's claim some months before its allowance to be withdrawn from Washington to the Veterans' Bureau of the tenth district in Minneapolis, and he had informed him how to proceed to prove up Cuff's claim.

[1] On the issue of fact whether the transaction with the defendant was a bribe or a loan, the evidence was conflicting. Newkirk testified that, about November 18, 1922, the defendant Beach called him up to the phone and said, "Newkirk, if Cuff's claim goes through during the next few days, do you suppose he would slip me $300?" and Newkirk answered, "I don't know;" that the defendant made some reply, asking him to do it, and he consented to see Cuff about the case; that he did see him on the evening of the day he received this telephone call; that on the next day the defendant called him on the phone and asked him if he had seen Cuff, and he answered that he had; that the defendant then asked if everything was all right, and he answered him, "It is O. K.;" that two or three days later the defendant again called him on the phone and said, "Cuff's check will be ready to-morrow, so notify him to come out to the Bureau and get it;" that he told him that he would, and the defendant said, "As soon as Cuff gets his money to have him go to the bank and cash the check and get six $50 bills and give to you, and you are to meet me over at the Plymouth Building;" that about 20 minutes later he talked with Cuff over the phone; that on the next day he met Cuff and his mother at the Plymouth Building in Minneapolis, and asked him if he had it, and he gave him six $50 bills, and he went to the Loeb Arcade, where he met the defendant and told him, "Here is the money," and gave him the six $50 bills Cuff gave to him to give to the defendant, and the latter said, "That is fine;" and that in September, 1923, the defendant had a conversation with him, and as a result of that conversation he made his promissory note for $300 and delivered it to Cuff. Cuff testified at length in corroboration of the testimony of Newkirk, and there was other evidence in the case tending to prove the facts to which they testified.

On the other hand, there was much testimony to the effect that the defendant in November, 1922, was in great need of money; that he had had sickness in his family, he had spent all the money he had, he had borrowed some, and was trying to borrow more. The defendant testified that he never phoned to or suggested to Newkirk that, if Cuff's claim should go through, he should slip him $300, but that he had asked Newkirk if he could not find some one from whom he could borrow $200 or $300, and Newkirk had told him that

he would try, and that later he asked Newkirk if he had found any one who had $200 or $300 to loan to him, and Newkirk answered, "No; I haven't; in fact I haven't inquired of anybody; but I will tell you, if young Cuff's claim were to go through, and he gets any considerable amount of money, I am satisfied I could borrow it from him;" that Newkirk was the first to suggest that he might borrow money of Cuff, and he (the defendant) never suggested it; that, after Cuff received his money, Newkirk told him that he got $300 from Cuff, but he would like to have all of it; that he (Newkirk) very much needed an overcoat, and a good overcoat would cost $65; that they then walked across the street and got one of the $50 bills changed, and Newkirk gave him $235 of the $300, and kept $65; that he supposed and believed that this was a loan to him of this money, and never thought of its influencing his action on Cuff's claim, nor of intending that it should influence him; and that its receipt never did influence him in any way in his action, or in his actual or possible action in his official capacity, in regard to the claim of Mr. Cuff. The defendant expressly denied all the testimony of Newkirk and Cuff tending to the contrary.

There was much other evidence in this case, and the court charged the jury that the government contended, and had offered evidence to sustain its contention, that the money in question was received by the defendant as a bribe to influence his official action, or possible action, regarding the claim of Mr. Cuff, while, on the other hand, the defendant contended, and had produced substantial evidence to sustain his contention, that the transaction was in fact a loan of money to and received by him honestly and in good faith, and that these facts presented a question of fact which it was their exclusive province to determine. They found a verdict for the government, and thereby determined that the transaction was a bribe, and not a loan, and that the testimony of Newkirk and Cuff stated the facts. This finding of the jury is now conclusive in this court.

[2] In this state of the case, counsel for the defendant take the position that the judgment below should be reversed, because the court below did not grant the request of the defendant's counsel after the close of the evidence to instruct the jury to return a verdict of not guilty in favor of the defendant, Beach, because neither at the times when the defendant solicited or received the money, nor at any other time, was there any question or matter, cause, or proceeding regarding

Cuff's claim pending, or which might by law be made pending, before him in his official capacity, in regard to which a bribe could influence his action in that capacity. But, in view of the evidence which we have set forth, the condition of the record at the close of the trial and the finding of the jury, this position is not tenable: (1) Because, when the defendant on the 18th day of November, 1922, through Newkirk, solicited the $300, and Cuff agreed to give it, the latter's claim was pending and undecided before the rating board of the medical division, and by an appeal from that division's subsequent judgment to the appeal board some question in that case might have been brought before the defendant for his action in his official capacity; (2) because, after the decision of the rating board of the medical division, an appeal might have been taken to the appeal board, as we have before stated, which would have required his official action upon some question in the case of Mr. Cuff; and (3) because during all this time from the 18th of November the defendant was the legal adviser of the manager of the district, he knew the facts which the jury have found, and the discharge of his duty in the official capacity of legal adviser necessarily imposed the duty of action in his official capacity as adviser and chairman of the board to prevent the bribe.

[3, 4] The next objection to the judgment presented by counsel for the defendant is that the indictment was insufficient to charge a crime under section 117 of the Criminal Code, because "nowhere in the indictment is it alleged that the approving or disapproving of the application of Percy J. Cuff for compensation for disability incurred in the military service of the United States and the payment therefor was or could be within the official duties of the defendant." But it is alleged in the indictment that, at the time the defendant solicited the bribe, Cuff's claim for compensation and the payment therefor were pending, and might be brought before him in his official capacity by virtue of the authority vested in him as legal adviser to and chairman of the board of appeals of the United States Veterans' Bureau of district No. 10. A careful study of the indictment has satisfied us that it was sufficient. Moreover, even if there was some technical defect in it, and there was no substantial defect, we find no place in the record where the objection now urged to the indictment was called to the attention of the court below, either by demurrer, motion, or otherwise, and the objection now urged is too technical and imma-

terial to warrant a reversal by an appellate court on first presentation in that court of a judgment after a complete jury trial in the court below. Ulmer v. United States (C. C. A.) 219 F. 641, 643; Dunbar v. United States, 156 U. S. 185, 191, 15 S. Ct. 325, 39 L. Ed. 390.

[5] Carl D. Hibbard was the district manager of the United States Veterans' Bureau for district No. 10. He was called by the government and testified that the defendant was his official legal adviser and the official legal adviser of the bureau. During his examination an affidavit of Newkirk, sworn to September 17, 1923, and an affidavit of Cuff, sworn to September 15, 1923, in which they had stated the facts relevant to the charges against the defendant, were produced and offered in evidence. Counsel for the defendant objected to their admission, and if they had been offered in the first instance before the testimony of Newkirk, or other witnesses, perhaps the objection to them would have been tenable. But when the offer of Newkirk's affidavit was made he had already testified at length in the trial of the case to all the substantial facts stated by him in his affidavit. The question was presented to the court whether under these circumstances the affidavit was admissible, and the trial judge admitted it. When Cuff's affidavit was offered, he had not testified; but he subsequently testified substantially to the same facts which were stated in his affidavit, and, if we concede that the admission of these affidavits was erroneous, they were not in our opinion prejudicial to the defendant, because all the substantial statements in them were testified to at the trial by those who made the affidavits, so that in our opinion no prejudicial error resulted to the defendant by their reception.

[6] The affidavits of Newkirk and Cuff were made by them when Mr. Hibbard conducted his investigation as general manager of the bureau of the intimations and statements that had been made to him that the defendant had taken money to influence his action in his official capacity. After these affidavits had been made, Mr. Hibbard wrote on September 18, 1923, to the defendant, that he was being suspended from duty from that date as legal adviser on charges that he had accepted $300 under pretense of securing a favorable adjudication in the case of Percy J. Cuff; that he had admitted to the district manager in substance the truth of those charges; that he was entitled to reply to those charges, and to a hearing and decision concerning them,

in accordance with section 6 of the Acts of Congress of August 24, 1912, 37 Stat. 555 (Comp. St. § 3287). On the next day the defendant caused to be delivered to Mr. Hibbard a letter in answer to the letter of Mr. Hibbard, in which he described this transaction with Newkirk and Cuff substantially as he described it in his testimony in this case, which has been recited. Defendant's counsel complain that these two letters were received in evidence in this case, and that their receipt was a fatal error. But an examination of the record discloses the fact that the court ruled out all of the letter of Mr. Hibbard, except the heading and the first paragraph, which simply stated that he was suspended from that date, and that the trial judge admitted the letter of the defendant in answer to Hibbard's letter, and no objection or exception to this final ruling upon this subject was made by the defendant or his counsel.

[7] Finally, it is contended that the admission in evidence of a memorandum from Kudish, district auditor of the bureau, to the defendant, dated July 31, 1923, in relation to a different claim of Cuff for reimbursement for expenses incurred on account of hospitalization, of a second memorandum on the same subject from Kudish to the defendant, dated August 15, 1923, of a memorandum from the defendant, and a proposed unverified affidavit on the same subject, and of a letter on the same subject from the defendant to Cuff, dated June 27, 1923, was erroneous, because they had no relation to the main issue on trial, whether a bribe was solicited or received in November, 1922. It is true that there was nothing in these memoranda, nor in the letter, in relation to the direct issue in this case, or in relation to the claim which had been allowed on November 21, 1922. They related to another claim of Cuff still pending in the bureau, entirely separate from the claim which had been paid; but they were offered by the government and were admitted by the court upon the express ground that they had some tendency to prove that the defendant displayed a special interest in Cuff's applications, and, as there was nothing in them prejudicial to the defendant on his trial upon the charge of bribery, based upon his action in 1922, we are not persuaded that there was any error in the admission of these memoranda and that letter.

Our conclusion is that there was no substantial error prejudicial to the defendant in the trial of this case, and the judgment below must therefore be affirmed; and it is so ordered.