## SLOAN v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
March 19, 1929.

No. 8267.

Emil P. Rosenberger, of St. Louis, Mo., and Charles C. Madison, of Kansas City, Mo. (Ira B. Burns, of Kansas City, Mo., on the brief), for appellant.

S. M. Carmean, Asst. U. S. Atty., of Kansas City, Mo. (Roscoe C. Patterson, U. S. Atty., and W. L. Vandeventer, Asst. U. S. Atty., both of Kansas City, Mo., on the brief), for the United States.

Before STONE, LEWIS, and COTTERAL, Circuit Judges.

STONE, Circuit Judge. Appellant was accused in an indictment containing three counts. The first count was eliminated by an order sustaining a plea of autrefois acquit. There was a verdict of acquittal on the second count. From a judgment of conviction on the third count, this appeal is brought.

The third count is as follows: "And the grand jurors of the United States aforesaid, impaneled, examined, sworn and charged as aforesaid, to inquire of and concerning crimes and offenses against the United States in the Western division of the Western district of Missouri, upon their oaths further present and charge that on or about the 1st day of December, 1926, and continuously thereafter, the said Silas E. Sloan, within the Western division of the Western district of Missouri, together with one L. E. Miller, whose true Christian name is to the grand jurors unknown, except as herein set forth, and who is herein named, but not presented or indicted, together with divers other persons whose names are to the grand jurors unknown did unlawfully, knowingly, willfully and feloniously confederate, combine, conspire and agree together among themselves, and with each other, to violate the provisions of section 151 of the Penal Code of the United States [18 USCA § 265], the same being an act of Congress making it an offense for any person, with intent to defraud, to pass, utter, publish or sell or attempt to pass, utter, publish or sell, or bring into the United States with intent to pass, publish, utter or sell, or keep in possession or conceal with like intent any falsely made, forged, counterfeited or altered obligation or other security of the United States, that is to say, the said Silas E. Sloan, L. E. Miller and divers other persons, whose names are to this grand jury unknown, did then and there unlawfully, willfully, knowingly and feloniously confederate, conspire, combine and agree together among themselves and with each other and with divers other persons to the grand jurors unknown, that the said Silas E. Sloan, L. E. Miller and divers other persons, whose names are to this grand jury unknown, would, in violation of section 151 of the Penal Code, engage in the business of unlawfully and feloniously passing, uttering, publishing, selling and attempting to pass, utter, publish and sell, and would keep in their possession and conceal, with intent to pass, publish, utter and sell, a large quantity of falsely made, forged and counterfeited obligations and securities of the United States, to wit, that they would unlawfully possess and conceal a large quantity of falsely made, forged and counterfeited Federal Reserve notes issued by the Treasury Department of the United States of America, which said notes would be in the similitude and likeness of genuine Federal Reserve notes issued as aforesaid with the intention of attempting to utter, publish and sell, and with the intention of uttering and selling the same to whomsoever would buy such falsely made, forged and counterfeited Federal Reserve notes, and the grand jurors aforesaid, do further present and charge that the said Silas E. Sloan and L. E. Miller did each and every act and

each and every thing hereinafter specifically described and charged, and that each and every act hereinafter charged was an overt act performed in pursuance of and to effect the purpose and object of the said unlawful conspiracy, combination, confederation and agreement between the said Silas E. Sloan, L. E. Miller and divers other persons, whose names are to this grand jury unknown; that is to say, that on or about the 14th day of December, 1926, the said Silas E. Sloan furnished and provided a Ford coupé to bring the said L. E. Miller to Kansas City in the Western division of the Western district of Missouri, and did drive and operate said automobile from the said city of St. Louis, Missouri, to Kansas City, Missouri, for the purpose of enabling the said Silas E. Sloan and L. E. Miller to deliver to one Charles Marados a large quantity of falsely made, forged and counterfeit Federal Reserve notes of the denomination of twenty dollars ($20.00), which said falsely made, forged and counterfeit Federal Reserve notes were in the similitude and likeness of genuine Federal Reserve notes issued by the United States Treasury Department; that said overt act was done in pursuance of and to effect the object and purpose of the unlawful combination, confederation and conspiracy hereinbefore set forth, and the grand jurors aforesaid, upon their oath aforesaid, do further present and charge that on the said 14th day of December, 1926, in Kansas City, in the Western division of the Western district of Missouri, the said L. E. Miller went to the Lucetta Hotel at 417 East Twelfth street and recovered and obtained approximately eighty (80) falsely made, forged and counterfeit Federal Reserve notes purporting to have been issued by the Treasury Department of the United States, of the denomination of twenty dollars ($20.00) each, for the purpose and with the intention of delivering said falsely made, forged and counterfeit Federal Reserve notes to one Charles Marados; that said overt act was done and performed to further and effect the object of the unlawful conspiracy aforesaid, and the grand jurors aforesaid do further present and charge that on the said 14th day of December, 1926, the said Silas E. Sloan stationed himself at and near No. 800 Main street in Kansas City in the Western division of the Western district of Missouri for the purpose of observing and acting as a lookout to determine whether the place of Charles Marados at 800 Main street in Kansas City, Missouri, was being watched by officers of the law; and the grand jurors aforesaid, upon their oath aforesaid, do fur-

ther say that on the said 14th day of December, 1926, said Silas E. Sloan accompanied the said L. E. Miller into the place of business of the said Charles Marados at said No. 800 Main street, for the purpose of selling and making delivery of the said eighty (80) falsely made, forged and counterfeit Federal Reserve notes to the said Charles Marados; that said acts were done and performed for the purpose of furthering and effecting the object of the unlawful conspiracy aforesaid, contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States of America."

Appellant urges many grounds for reversal. They are argued under nine points:

■ I. The first is that the evidence failed to sustain "indispensable elements" of the offense in that it was not proven that the conspiracy was entered into in the Western district of Missouri, where the indictment and trial were had. The indictment alleged that the conspiracy and certain overt acts occurred within that district. The proof was that the conspiracy was entered into at St. Louis, in the Eastern district of Missouri, and that certain overt acts were committed in the Western district. To constitute the crime of conspiracy under federal statutes, two things are necessary: An agreement, and an overt act in pursuance thereof. Except as a matter of venue, it makes no difference where either the agreement or the overt act takes place in order to constitute the crime. The only reason for stating such in an indictment is to fix the venue. Here, both the conspiracy and the overt acts were stated as occurring in the Western district. Proof that either occurred there would sustain such venue. If an overt act were proven within that district, the allegation as to place of agreement (conspiracy) would lose all importance so far as being an essential element requiring proof.

■ However, the allegation that the agreement took place within the Western district might have entitled defendant to a continuance on the ground of surprise if such had been timely urged. This is so because the defendant may, in absence of other knowledge, presume that unnecessary allegations in the indictment affecting the preparation of his defense outline the proof to be offered against him. If he first gains knowledge, during trial, that the proof of essentials will not coincide with the direction marked by the nonessential allegations and he is, because of such divergence, not then able to meet the proof and his rights are prejudiced thereby he is entitled to a continuance so that

he may so prepare. This right depends upon his timely application for such continuance and showing supporting such claim of surprise. Here, no such application was even made. There can be no doubt that, before the trial began, defendant knew just what the government would attempt to prove—this is true, because closely related matters had before been tried wherein this defendant was also accused. There was no surprise here. To permit appellant to go to trial with a full knowledge, which he had, of the direction of the accusing evidence and then escape through failure to prove (or disproof of) a nonessential allegation would be discreditable to the administration of justice. It is never necessary to prove a nonessential allegation.

II. The next assignment is related to the above and is that the court fatally erred in charging the jury that they must find the conspiracy to have occurred in the Western district, but could find the defendant guilty, "even though you should find that conspiracy was a mere continuance or renewal of a conspiracy previously entered into outside of the Western division of the Western district of Missouri." To be the basis of reversal, an error must be prejudicial. Even if this were error, it favored the defendant beyond the law applicable and it included, as a necessary element, that which was essential, to wit, a conspiracy somewhere.

III. It is claimed that in the charge of the court guilt might be shown by proof of any of several overt acts—one of which occurred outside of the Western district. This was error, but again it was not prejudicial. The jury could not possibly have found the above act outside the district without finding continuance of that act which was within the district. The act outside was the furnishing of an automobile in St. Louis in which to make a trip to Kansas City. However, here it was admitted by accused that he drove this car to Kansas City and that the counterfeiter, Miller, came with him. Bringing Miller into the Western district in prosecution of the conspiracy was an overt act within that district. There was no dispute as to this overt act. Nor could there be any dispute that it was in promotion of the conspiracy, if any conspiracy existed. The entire controversy in the trial was as to the existence of the alleged conspiracy. Upon that point the evidence was in direct conflict.

IV. This point is a claim that the verdict is inconsistent with the acquittal on the second count which was for the possession of counterfeit money. There is no slightest basis for this claim. The conspiracy alleged was to pass, etc., counterfeit money. The *possession* by accused of the counterfeit money involved in the Kansas City transactions was in no way involved in the conspiracy charged or proven. It was not alleged in the indictment, covered by the proof, nor included in the charge of the court.

V. This point is stated to be that certain overt acts should have been eliminated from the jury because they had to do with a transaction with one Marados involving "uttering and passing" counterfeits while the indictment is limited to "possession with intent to pass, utter," etc., such counterfeits. The indictment charges a conspiracy to "in violation of section 151 of the Penal Code, engage in the business of unlawfully and feloniously passing, uttering, publishing, selling and attempting to pass, utter, publish and sell, and would keep in their possession," etc. Counsel say this is not enough because there is no allegation that such was "with intent to defraud." The allegation was that the conspiracy was in violation of section 151, Penal Code, and was unlawful and felonious. This is certainly sufficient allegation of the "intent to defraud." In addition to this is a preceding allegation as follows: "Did unlawfully, knowingly, willfully and feloniously confederate, combine, conspire and agree together among themselves, and with each other, to violate the provisions of section 151 of the Penal Code of the United States, the same being an act of Congress making it an offense for any person, with intent to defraud, to pass, utter, publish or sell or attempt to pass, utter, publish or sell, or bring into the United States with intent to pass, publish, utter or sell, or keep in possession or conceal with like intent any falsely made, forged, counterfeited or altered obligation or other security of the United States."

VI. This point is that certain evidence as to other transactions was introduced over objection and exception. Without discussing whether such transactions were so related to other unquestionably competent evidence as to be competent or not, the admission of this evidence, if error, was cured by defendant who examined and cross-examined in detail about those same matters; also, the entire evidence as to the Marados transactions was let in without objection until at the very end thereof; also, defendant was asked, on direct examination by his counsel, as to some of these matters.

VII. This point has to do with questions asked on cross-examination of several character witnesses. These witnesses were asked what defendant's reputation prior

to the date of the alleged conspiracy was "for truth and veracity, honesty and good citizenship." They answered that it was good. On cross-examination, they were each asked if they had read in the St. Louis papers that, a couple of days after the date of the alleged conspiracy, officers had found 60 gallons of whisky, false whisky labels, empty bottles and counterfeit revenue stamps in defendant's room. We think this cross-examination was improper. It is not true, as appellant contends, that he can limit, by the form of his question, or that the law limits the inquiry as to "reputation" to the time and prior to the time the offense is alleged to have been committed. Any limitation as to time is within the sound discretion of the trial court, subject to review if too remote, either before or after the crime, as to properly bear thereon. But the matter put in issue was the *general reputation* which means the estimate generally held by those who know the party. It is no impeachment of that reputation to show that the character witness himself has seen a publication derogatory to the character of the party. While the purpose of testimony as to reputation is, indirectly, to show character on the theory that the good or bad impression as to honesty, veracity, etc., which a man makes upon those coming in contact with him is probative of his character, yet the two are different. Character is what a man really is. Reputation is what the general run of people who know him think he is. The inquiry here was as to what people thought about appellant's character—not as to what these witnesses thought. It would be no impeachment of such testimony to show that a newspaper had published something derogatory which the witness had read. This publication would not have been proper evidence. It was in no wise proper impeachment as to reputation. Otherwise, the bare publication of something derogatory could be used to destroy the benefit of a spotless reputation, even though the publication be entirely false or even maliciously so and even though the general public resented instead of believing it. While there is a wide discretion in the trial court in the admission of impeaching testimony, yet, we think such is not entirely free from review and was exceeded here. The patent purpose of counsel was not impeachment, but to get before the jury the incident of this search of appellant's room when such was not itself proper testimony and had been, earlier in this case, expressly ruled upon and excluded by the court when the jury was absent. The defense here was that there was never any conspiracy and

that the trip to Kansas City was, so far as appellant was concerned, entirely innocent. There was no testimony of previous criminal character or even of bad reputation to weaken the effect and possibly mitigate the error of this cross-examination. It was prejudicial.

VIII. This point deals with refusal of the court to charge as to the consideration of circumstantial evidence. The court was right. This was not a case of that character. The proof of conspiracy was as direct as proof could be.

IX. This point is the same, in substance, as points I and II and is not well taken.

Conclusion. The only error is in cross-examination of the character witnesses. That error is reversible error.

The judgment should be and is reversed, and the case remanded for new trial.