## KROSKA v. UNITED STATES.
### No. 9002.

Circuit Court of Appeals, Eighth Circuit.
May 25, 1931.

STONE, J., dissenting.

Joseph P. Kolesky, of Minneapolis, Minn. (Richard Musenbrock, of Minneapolis, Minn., on the brief), for appellant.

O. A. Blanchard, Asst. U. S. Atty., of St. Paul, Minn. (Lewis L. Drill, U. S. Atty., and Robert V. Rensch, Asst. U. S. Atty., both of St. Paul, Minn., on the brief), for the United States.

Before STONE and GARDNER, Circuit Judges, and WOODROUGH, District Judge.

GARDNER, Circuit Judge.

The appellant, David M. Kroska, was convicted under an indictment which charged that on the 28th day of June, 1929, in and upon the main highway, from a point to the grand jurors unknown, to the farm known as the Peter Kroska farm, located about two and one-half miles north of Avon, a more particular description of which is to the grand jurors unknown, in the county of Stearns, in the state and district of Minnesota, the defendant did then and there willfully, unlawfully, and feloniously transport in an Oldsmobile coupé automobile intoxicating liquor, to wit, moonshine whisky, the exact amount thereof to the grand jurors being unknown. His demurrer to the indictment and his motion to suppress certain evidence claimed by him to have been obtained under an unlawful search of his automobile were overruled, and these rulings of the lower

court are here urged as error. In support of the demurrer, it is urged that the indictment was not sufficiently definite and certain, and did not sufficiently apprise the defendant of the nature and cause of the accusation against him. No demand for a bill of particulars was made. The indictment set forth the facts constituting the essential elements of the offense, and if defendant felt any uncertainty as to what was intended thereby, or feared that he might be taken by surprise by the production of evidence for which he was unprepared, he should have applied for a bill of particulars. The indictment was good as against the demurrer interposed. Myers v. United States (C. C. A.) 15 F.(2d) 977; McMillan v. United States (C. C. A.) 27 F.(2d) 94; Swafford v. United States (C. C. A.) 25 F.(2d) 581; Rinker v. United States (C. C. A.) 151 F. 755; Cochran v. United States (C. C. A.) 41 F.(2d) 193.

Defendant's automobile was searched by two federal prohibition agents without a search warrant, certain intoxicating liquors found therein seized, and defendant was arrested without warrant in his home, the officer making the arrest having entered without invitation. A motion to suppress the use of any and all evidence obtained by virtue of the search and seizure by the federal prohibition agents of a certain Oldsmobile coupé, his person and his premises, was urged on the ground that the arrest and the search and seizure were violative of the Fourth Amendment to the Constitution of the United States, and, therefore, illegal. This motion, though filed and called to the court's attention before the trial began, was not then passed upon, but was considered at the close of the case, all testimony obtained by virtue of the search and seizure being received subject to the motion.

It appeared from the testimony of the prohibition agents who made the search and seizure that, while they were driving a Ford truck along a public highway in the vicinity of the Kroska farm, they observed a dark blue coupé automobile turn into the Kroska farm. The witness Rhoades testified:

"We proceeded on into the Kroska farmyard. I saw this coupe in the yard as I drove in. It was by the side door, on the west side of the house, about three or three and a half feet, possibly four feet, from the house. The west side of the house would be the right hand side when you face the house from the highway. No one was in the coupe as I approached it. The motor was not running. The doors of the coupe were closed. I made particular observation of this coupe, after I drove into the yard. I parked the truck about twenty feet at the rear of the coupe, got out of the truck and walked toward the rear door, or south of the Kroska home. I walked towards the coupe and looked at it as I approached it. I noticed the rear deck of the coupe was raised up about three inches. I could see a part of a keg, and I then stooped over, and there was a ten gallon keg there. I could see that opening, and the keg, while I approached the car. After I stooped over and observed that it was a ten gallon keg, I called Agent Peterson and told him to watch the car, and I immediately went into the rear door of the farm home."

The witness then testified that he entered the grade basement door of the house and passed through several rooms of the house, going upstairs, where he found the defendant and placed him under arrest. Continuing, the witness testified:

"When I returned downstairs the car was not in the same condition as when I saw it before I went in. Agent Peterson had the rear deck open, and was examining the keg. I made an examination of these kegs and found that they contained white moonshine whiskey."

On being recalled, the witness testified, among other things, as follows:

"Q. Mr. Rhoades, going back to the time that you drove into the yard, as you approached this Oldsmobile coupe, about which you have testified, did you detect any odor about the yard there? A. Well, I stooped over about four feet from the car, and I detected a strong odor of moonshine whiskey, coming from the rear compartment of the coupe."

On cross-examination, the witness further testified:

"The first time that I saw this car—this coupe car in question here, was when I was driving on this road, and saw it turn—saw it in the Kroska yard about three or four city blocks away from me. After I saw the car I proceeded into the Kroska farmyard. The car was moving along. I saw it from the rear. I kept right on going. * * * The coupe car when I first saw it was about two hundred and eighty-seven feet from the house. It then turned and went around a bend, and I lost sight of it, but we kept right on going. I had noticed that car there not very long, about ten seconds. The car was moving quite fast. Then we got into the yard. In the yard I saw a Ford truck parked

near the garage, an Oldsmobile coupe parked at the side entrance of the house, and a Ford touring car parked between the house and the garage, slightly to the side of the road going into the yard. * * * After I drove into the yard, I got out of the truck, started towards the rear door of the Kroska home. I stopped my truck from the Kroska home about four or five feet, right out almost in front of it—that is, to the side. I walked around the right hand side—the right hand side of the house—and as I approached this car I noticed a keg, the rear deck partly open, and I stooped over, and at that time I received an odor of moonshine whiskey, and I called on Mr. Peterson, who guarded the car, and I went into the Kroska home."

The testimony of the other prohibition agent was substantially the same as that of Rhoades. Neither of the officers saw defendant until Rhoades arrested him in the house. The record is absolutely barren of any evidence indicating why the prohibition agents went to defendant's farm. There is nothing to indicate that they had any reason to suspect that defendant had on his premises any intoxicating liquor, so that the only evidence forming the basis of probable cause for the search which they made was such as was secured by them after they had entered upon the private premises of defendant. The car was parked within three or four feet of his home, and the agents, when they observed anything to arouse their suspicion, with reference to the contents of the car, were in defendant's yard, within a few feet of his home. So far as appears from this record, they were trespassers. Section 40, title 27, USCA, provides that:

"When the commissioner, his assistants, inspectors, or any officer of the law shall discover any person in the act of transporting in violation of the law, intoxicating liquors in any wagon, buggy, automobile, water or air craft, or other vehicle, it shall be his duty to seize any and all intoxicating liquors found therein being transported contrary to law."

In construing this statute, the Supreme Court of the United States, in Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 287, 69 L. Ed. 543, 39 A. L. R. 790, said:

"The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law."

The government relies upon this statute as authorizing the search and seizure in this case, while defendant asserts that they are violative of the Fourth Amendment to the Constitution, and that the admission of the evidence so secured violated the rights guaranteed him by the Fifth Amendment to the Constitution. In the Carroll Case, it was decided that federal prohibition officers had the right to search an automobile on the public highway without warrant, when the officers had probable cause to believe such car was offending against the National Prohibition Act. Chief Justice Taft, in delivering the opinion, said, however, that:

"It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search."

■■ If the search and seizure were violative of the Fourth Amendment to the Constitution, then the evidence secured thereby should have been suppressed, even though it was obtained from an automobile. An unjustified search and seizure violates the Fourth Amendment, whatever the character of the property seized, whether it was in the home, in an office, or in an automobile, and whether taken by force, by stealth, or by fraud. The Fourth Amendment protects the citizen, whether innocent or guilty, against every unjustifiable intrusion by the government upon his privacy, and it has been said that these amendments confer, as against the government, "the right to be let alone." The Fourth Amendment, however, does not prohibit the search without warrant of an automobile for liquor illegally transported, if the search is upon probable cause, and it has been held that to show probable cause it is not necessary that the officer should have had before him legal evidence of the suspected illegal act, but it is enough if facts have come to his attention of such a character as to lead a reasonably discreet and prudent man to believe that liquor is illegally possessed in the automobile to be searched. Dumbra v. United States, 268 U. S. 435, 45 S. Ct. 546, 69 L. Ed. 1032. The question, therefore, resolves itself into the inquiry: Did these officers, before they entered defendant's private premises, possess such information as to lead a reasonably discreet and prudent man to believe that liquor was illegally possessed in his automobile? Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177;

Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647; Silverthorne Lbr. Co. v. United States, 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319, 24 A. L. R. 1426; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; Byars v. United States, 273 U. S. 28, 47 S. Ct. 248, 71 L. Ed. 520; Gambino v. United States, 275 U. S. 310, 48 S. Ct. 137, 72 L. Ed. 293, 52 A. L. R. 1381; Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746; Go-Bart Importing Co. v. United States, 282 U. S. 344, 51 S. Ct. 153, 158, 75 L. Ed. 374; Husty v. United States, 282 U. S. 694, 51 S. Ct. 240, 75 L. Ed. 629; Day v. United States (C. C. A.) 37 F.(2d) 80, 81.

■ The prohibition officers had neither a search warrant nor a warrant for the arrest of defendant. It is quite generally held that where a defendant is lawfully placed under arrest, then, as an incident to such arrest, he may be searched, as may also the place of his arrest. Here, however, with no previous knowledge of the facts or circumstances warranting even a suspicion that defendant was guilty of violating the National Prohibition Act, or that his automobile had been illegally transporting liquor, the officers entered his private premises. One of them, uninvited, entered his home, and, finding him upstairs, arrested him. The premises entered constituted the curtilage of defendant's home [Temperani v. United States (C. C. A.) 299 F. 365; United States v. Di Corvo (D. C.) 37 F.(2d) 124; Turknett v. State, 36 Okl. Cr. 401, 254 P. 985; Russell v. State, 37 Okl. Cr. 71, 256 P. 758; Wolf v. State, 110 Tex. Cr. R. 124, 9 S.W.(2d) 350; Childers v. Commonwealth, 198 Ky. 848, 250 S. W. 106], and not an open field, as that term is used in Hester v. United States, 265 U. S. 57, 44 S. Ct. 445, 68 L. Ed. 898. It cannot well be claimed that this was a lawful arrest; in fact, it was flagrantly lawless so far as appears from the record, and the only facts or circumstances known by the officers which might lead a reasonably discreet and prudent man to believe that liquor was illegally possessed in the automobile were such as were obtained by them by reason of their lawless invasion of the premises constituting the curtilage of defendant's home. In other words, they were wrongfully upon the premises of defendant and were wrongfully searching his possessions at the very time they looked into the rear deck of the Oldsmobile coupé and obtained the information upon which the government seeks to justify the search and seizure. This court, in Day v. United States, supra, in an opinion by Judge Kenyon, said:

■ "Probable or reasonable cause is a belief fairly arising out of facts and circumstances known to the officer that a party is engaged in the commission of a crime."

The Supreme Court, in Byars v. United States, supra, said:

"Nor is it material that the search was successful in revealing evidence of a violation of a federal statute. A search prosecuted in violation of the Constitution is not made lawful by what it brings to light; and the doctrine has never been recognized by this court, nor can it be tolerated under our constitutional system, that evidences of crime discovered by a federal officer in making a search without lawful warrant may be used against the victim of the unlawful search where a timely challenge has been interposed."

In Go-Bart Importing Co. v. United States, supra, in an opinion by Mr. Justice Butler, it is said:

"The first clause of the Fourth Amendment declares: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.' It is general and forbids every search that is unreasonable; it protects all, those suspected or known to be offenders as well as the innocent, and unquestionably extends to the premises where the search was made and the papers taken."

■ Facts and circumstances known to the officers before entering defendant's premises, sufficient to lead them, as reasonably discreet and prudent men, to believe that liquor was in his possession in his automobile, may have existed, but, if so, they are not reflected in this record.

■ But it is argued that the error, if any, in overruling defendant's motion to suppress, was waived by him and rendered nonprejudicial by reason of the fact that he himself took the witness stand and admitted that he owned the automobile which had been searched and the intoxicating liquor found therein; and that this was the only evidence produced against the defendant which was secured by virtue of the unlawful search and seizure. It has already been observed that defendant timely filed his motion to suppress, and brought the matter to the attention of the court, and it was because of the procedure adopted by the court that the motion was not

heard before the trial of the action; but as in Agnello v. United States, supra, the facts disclosing that the search and seizure violated the Fourth Amendment were not in controversy, but appeared from the testimony of the witnesses called to give the evidence. Defendant was not responsible for the rule of practice adopted by the court, and it cannot be allowed to prevail over his constitutional right. Gouled v. United States, supra.

While the defendant testified in his own behalf that he was the owner of the automobile, and that he was likewise the owner of the intoxicating liquor, having that day acquired it on the premises, he denied having transported the liquor, denied having placed it in the automobile, and denied that the cover of the rear deck of the automobile was open, but testified that it was closed and latched, and denied that the automobile had been used since the night before, when it was parked by him where it was then standing. The testimony of the prohibition agents has already been referred to. It included testimony to the effect that they had placed their hands upon the radiator of the car, and that the motor was hot. Substantially all of the testimony of the government, including the testimony as to the temperature of the motor of the car, was secured by virtue of the search and seizure, and defendant's testimony was induced by the introduction of this illegal testimony, and as said by the Circuit Court of Appeals of the Fifth Circuit, in Cofer v. United States, 37 F.(2d) 677, 679:

"His testifying after the introduction of the shells in evidence by the government may have been induced by the introduction of the illegal evidence, and so he cannot be said to have voluntarily testified, or to have waived his objection to the illegal evidence thereby."

[9] It must be borne in mind that the charge here was illegal transportation of intoxicating liquor, and there was one vital bit of evidence secured by reason of the unlawful search and seizure and introduced against the defendant which he did not admit. That was the evidence, above adverted to, to the effect that, at the time of the search, the motor in the car was still hot. This was a physical fact which directly, and, if believed by the jury, conclusively disproved the testimony of the defendant to the effect that the car had not been used since the night before the search. The introduction of that evidence was prejudicial, and it was not waived by any testimony of the defendant.

It follows that it was prejudicial error to deny defendant's motion to suppress the evidence secured by this unlawful search and seizure, and the judgment is reversed and the cause remanded, with directions to grant defendant a new trial.

STONE, Circuit Judge (dissenting).

I agree with the majority that the indictment is sufficient. I am compelled to dissent from that portion of the opinion reversing the case because of the admission of evidence procured through the search and seizure. Without expressing any opinion as to the lawfulness of the search and seizure, I think there was no reversible error (if error), because this record convinces me that no prejudice could possibly have resulted from reception of the evidence gained by the search and seizure.

Not only has it long been the judicial appellate practice to regard nonprejudicial errors as insufficient for reversal (Lancaster v. Collins, 115 U. S. 222, 227, 6 S. Ct. 33, 29 L. Ed. 373), but all federal appellate courts are under the statutory injunction to disregard errors, in criminal as well as civil cases, where an examination of the entire record shows they "do not affect the substantial rights of the parties." 28 USCA § 391. "The rule that harmless error is not reversible error is upheld as well in criminal cases * * * though, doubtless, the question of prejudice in such case must be resolved in conformity with the strict principles of the criminal law." Brown v. U. S., 142 F. 1, 4, Seventh Circuit. "In reviewing a judgment in an appellate court, the burden is on the plaintiff in error to show that error in the admission of testimony was prejudicial" [Marron v. U. S., 18 F.(2d) 218, 219, Ninth Circuit; Simpson v. U. S., 289 F. 188, 191, Ninth Circuit; and to the same effect, Trope v. U. S., 276 F. 348, 351, this court; Rich v. U. S., 271 F. 566, 570, this court; Haywood v. U. S., 268 F. 795, 798, Seventh Circuit]. "Whether prejudice results from the erroneous admission of evidence at a trial is a question that should not be considered abstractly or by way of detachment. The question is one of practical effect, when the trial as a whole and all the circumstances of the proofs are regarded." Williams v. U. S., 265 F. 625, this court. In determining this "practical effect" of challenged evidence, some situations have arisen sufficiently often to give rise to certain rules of application. One such rule is that where the facts covered by the challenged evidence are, elsewhere in the trial, admitted by the defendant, testified to by him or his witness, or clearly estab-

lished by other evidence, there is no prejudice. This rule has been repeatedly announced and applied in the Supreme Court (Holt v. U. S., 218 U. S. 245, 251, 31 S. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138), in this court[1] and in other circuits.[2] This rule is accurately applicable to all of the evidence secured through the search and seizure in the present case, as will now be shown.

This indictment and conviction was for the transportation, in an Oldsmobile coupé, of "moonshine whiskey" from a highway "to the farm known as the Peter Kroska farm." The main evidence for the government was by two prohibition agents. While driving along a highway which ran past the Kroska farm, these agents observed an Oldsmobile coupé turn into that farm about 287 feet from the Kroska house. At the time they saw the car it was about three or four city blocks in front of them. The car passed out of their sight behind a bend in the farm roadway. They proceeded directly in to the farmyard after the car, and found it parked in front of the farm house. They stopped their car behind the Oldsmobile. The rear deck of the Oldsmobile was raised several inches, revealing two kegs. The agents detected the odor of moonshine whisky, which they ascertained was leaking from one of the kegs. One of the agents guarded the car while the other entered the house and found appellant, whom he arrested and brought out to where the car was. Appellant admitted owning the car, but denied having driven it in. Confronted with the fact that the motor of the car was still hot, he admitted he had driven the car in about two minutes before with the

[1] In this court some of the cases are the following: Norwood v. U. S., 45 F.(2d) 495, 496, where a telephone directory was improperly admitted to show partnership because no sufficient foundation laid, but the error held nonprejudicial because appellant and other testimony showed partnership; Lipscomb v. U. S., 33 F.(2d) 33, 36, where evidence of unlawful sale of liquor in a trial for perjury held nonprejudicial because the indictment charged this sale as being the basis of the suit wherein the perjury was committed; Porter v. U. S., 31 F.(2d) 544, 545, where incompetent evidence of the true name and address of appellant held nonprejudicial because appellant gave the same evidence; Sloan v. U. S., 31 F.(2d) 902, 905, where evidence as to other transactions held nonprejudicial because later appellant testified thereto; Beach v. U. S., 19 F.(2d) 739, 743, where introduction of affidavits held nonprejudicial because affiants testified to substantially the facts in the affidavits; Anderson v. U. S., 18 F.(2d) 404, 405, where evidence of alcohol found in search a short time after illegal sales, held nonprejudicial where appellant admitted the presence thereof; Havener v. U. S., 15 F.(2d) 503, 506, where parole evidence of conviction of principal offender, in the trial of an abettor, held nonprejudicial by admission of such conviction by counsel for appellant; Cooper v. U. S., 9 F.(2d) 216, 223, where testimony as to signatures of appellants on tax returns, held nonprejudicial because sufficiently established by other testimony; Ingram v. U. S., 5 F.(2d) 940, 941, where parole testimony of contents of official records, held nonprejudicial because same facts shown in testimony of appellant and one of his witnesses; Bergera v. U. S., 297 F. 102, 115, where evidence was held nonprejudicial because same facts shown by other evidence; Lucas v. U. S., 275 F. 405, 407, where a confession introduced without proper showing that it was voluntary was held nonprejudicial because cross-examination of appellant showed it was voluntary; Kreuzer v. U. S., 254 F. 34, 38 (certiorari denied 249 U. S. 603, 39 S. Ct. 260, 63 L. Ed. 792), where testimony by a participant in a raid as to what another participant said about a barricade, held nonprejudicial where the witness testified as to what he himself saw and heard the appellant do; De Moss v. U. S., 250 F. 87, 88, where parole testimony as to a check given for liquor, held nonprejudicial because other undisputed testimony that check was given by appellant; Garanflo v. U. S., 246 F. 910, 914, where incompetent evidence held nonprejudicial because appellant testified to same matter; Blackwell v. U. S., 236 F. 912, 913, where testimony that business of defendant on certain day was hauling whisky held nonprejudicial because admitted by appellant.

[2] In other circuits some of the cases are as follows: First Circuit, Thompson v. U. S., 144 F. 14, 19-20, 7 Ann. Cas. 62; Second Circuit, Becher v. U. S., 5 F.(2d) 45, 52; Third Circuit, Sibona v. U. S., 294 F. 272, 274, where admission of sample of wine from barrels found at appellant's place held nonprejudicial because testimony by government that appellant admitted, at time of seizure, that barrels contained wine; Stern v. U. S., 193 F. 888, 896; Cook v. U. S., 159 F. 919, 922, certiorari denied 209 U. S. 551, 28 S. Ct. 761, 52 L. Ed. 922; Fourth Circuit, Malacrauis v. U. S., 299 F. 253, 255; Jones v. U. S., 296 F. 632, 634; Savage v. U. S., 295 F. 686; Bullard v. U. S., 245 F. 837, 839; Sneierson v. U. S., 264 F. 268, 275; Fifth Circuit, Williams v. U. S., 46 F.(2d) 731, 732; Benese v. U. S., 25 F.(2d) 231, 232; McLendon v. U. S., 14 F.(2d) 12, 15; Sharp v. U. S., 280 F. 86, 88, where evidence as to presence of liquor held nonprejudicial since appellant admitted its presence; Brown v. U. S., 257 F. 46, 51; Gregorat v. U. S., 249 F. 470, 472; Dean v. U. S., 246 F. 568, 574; Sixth Circuit, McDaniel v. U. S., 294 F. 769, 770 (certiorari denied 264 U. S. 593, 44 S. Ct. 453, 68 L. Ed. 866); Tucker v. U. S., 224 F. 833, 840; Seventh Circuit, Kriebel v. U. S., 8 F.(2d) 692, 696; Michael v. U. S., 7 F.(2d) 865, 866; Arnold v. U. S., 7 F.(2d) 867, 870; Brown v. U. S., 142 F. 1, 3; Ninth Circuit, Mitchell v. U. S., 23 F.(2d) 260, 263; Marron v. U. S., 18 F.(2d) 218, 219; White v. U. S., 16 F.(2d) 870, 872, where introduction of narcotics claimed to have been unlawfully seized held nonprejudicial because possession thereof admitted by accused; Bilodeau v. U. S., 14 F.(2d) 582, 585, where introduction of documents illegally seized held nonprejudicial because same facts shown by uncontradicted evidence; McFarland v. U. S., 11 F.(2d) 140, 141, where evidence gained in unlawful search held nonprejudicial because same facts admitted by counsel for accused; Dawson v. U. S., 10 F.(2d) 106, 108, where improper evidence of possession and sale of liquor held nonprejudicial because proven by other evidence; Libera v. U. S., 299 F. 300, 301, where evidence of liquor and still gained by unlawful search held nonprejudicial because accused admitted such possession; Temperani v. U. S., 299 F. 365, 367, where introduction of liquor, etc., obtained in unlawful search held nonprejudicial because accused admitted same facts; Wells v. U. S., 257 F. 605, 615; Stewart v. U. S., 211 F. 41, 45; Reagan v. U. S., 202 F. 488, 491, 44 L. R. A. (N. S.) 583; Barnard v. U. S., 162 F. 618, 626; Court of Appeals of the District of Columbia, Harrod v. U. S., 58 App. D. C. 254, 29 F.(2d) 454, 455; Harris v. U. S., 50 App. D. C. 139, 269 F. 481, 482.

whisky in it, and said he had bought the whisky from an unnamed person and was going to deliver it to some "soft drink" places. The agents filled a bottle with whisky from one of the kegs and destroyed the remainder of the liquor. The preceding is the main evidence of the government's case in chief. There was extended cross-examination of the agents upon all of the above facts. Thereafter, appellant took the stand and also introduced several other witnesses, including his uncle, brother, and mother, who were at the place while the agents were there. Appellant testified as follows:

"After dinner, when we were ready for work, a Ford sedan drove in the yard, about one o'clock. I went outside, and I spoke to the fellow, a man that owed me money for some tires; his name was Jack Paulson. I spoke to him; he said he did not have no money, but he brought the liquor in, in place of the money. He brought two ten-gallon kegs. I told him I did not need the whisky, but as long as he brought it—well, I will take it off of his hands, if he did not have the money. It was placed in the Oldsmobile; it was in the back; the two kegs were across this way (indicating) towards the street, about that far from the rear (indicating). I smelt it; it was like whiskey, moonshine.

"By the Court:

"Q. What did he tell you it was; what did he say it was? A. Well, when I smelt of it, it was like moonshine. After these two kegs were placed in the rear of this car I closed the cover clean down shut, and I turned the knob, so that it was closed. * * *

"And then he [one of the agents] asked me if the Oldsmobile coupe was mine, and I told him 'Yes.' And then he asked me where did I get the liquor. I told him a man brought it out with a Ford sedan at one o'clock. He asked me what I was going to do with it. I told him I was going to take it by the barn, towards evening."

His uncle and his brother testified to seeing the kegs of whisky in the car at the time the officers were there. Appellant denied telling the officers that he had driven the car in shortly before, and said the car had not been driven since the night before. His other witnesses testified that the car had not been driven that day.

From the above outline of the evidence, several matters are clear. One is that there was no disputed issue of fact as to the two kegs of moonshine whisky being in the Olds-mobile car parked in front of the house, nor that the car and the whisky belonged to appellant. Appellant directly admitted that the car and whisky were his and that the whisky was in the car. Another is that the sole disputed issue of fact for the jury to decide was whether appellant had transported the whisky in the car. He denied that the car had been used that day. The agents testified they had closely followed it into the farmyard that afternoon.

In this state of the evidence, what prejudice was suffered by appellant through evidence based on information obtained by the search and seizure? The evidence so obtained was that the car contained two kegs of moonshine whisky. Appellant and his witnesses voluntarily testified to those facts. There was never any dispute in the evidence about that. An examination of the numerous cases cited in the preceding footnotes will not reveal a single one stronger than the facts of this case, and most of them are not so strong. Aside from this unbroken line of authorities dealing with similar situations, it is impossible for me to conceive any prejudice from proof of an admitted and entirely undisputed fact.

But the majority opinion sets forth another piece of evidence. That is, that the agents testified to having examined the motor of the Oldsmobile and found it to be hot. I seriously question whether this information is within the protection of the amendment but, solely for the purposes of argument, if it be conceded that it is, yet there remains the question of prejudicial or nonprejudicial effect thereof. The only bearing of this evidence was upon the recent use of the car—the transportation. This evidence came solely from the two agents. The testimony of appellant and his witnesses was in direct denial, because they contended the car had not been used since the night before. Therefore, whether the motor was hot or not depended solely upon the credibility of the two sets of witnesses. These same agents swore positively that they had seen this car turn into the farm roadway about three or four city blocks ahead of them; that they were traveling toward it at the time; that they followed, without stopping their own car, into the farmyard and found this car, which they had just seen, parked in front of the house, which was about 287 feet from where it had turned off of the road into the farm. The entire evidence of the agents shows that the only reason they turned into the Kroska farm was to follow this car which was only a few hundred

feet ahead of them. The other evidence of transportation is that of the agents to the effect that appellant admitted he had just driven the car in. In short, the entire evidence that this car was recently driven into the farmyard consisted of three pieces, as follows: The agents seeing it driven in and following it; the admission of appellant that he had driven it in; the evidence that the motor was still hot. All of this evidence was given by the two agents. The jury must have approved their credibility and believed them, or there was no way possibly to reach a verdict of guilty. In this situation, how can it be said that there was the slightest prejudice from the evidence as to the hot motor? Could the evidence of the agents that the motor was still hot add to their positive evidence that they had seen and closely followed this car a few hundred feet to where it was parked? Could such evidence add to the testimony of the agents that appellant had admitted having just driven the car in? The fact clearly is that this evidence came into the case, not at all as proof of the car being driven in, but it came in connection with the admission of appellant. There was never any doubt in the minds or the evidence of the agents that they had just seen this car driven into the farmyard, but when appellant denied to them that he had driven it in they faced him with this contradicting physical fact and, thereupon, he made the admission that he had driven it in. Viewing this entire situation, it is impossible for me to see how there could have been any prejudice from the admission of this piece of evidence.

But it seems to be the view of the majority that, because some of the above evidence was secured by what is deemed an unlawful search and seizure, the vice of admitting such evidence cannot be cured even though the appellant himself, or other testimony entirely nullifies the effect of such testimony. This upon the theory that the appellant cannot be said to have given his nullifying testimony voluntarily, but under the compulsion of a situation created by the erroneous action of the court. I think this view is directly contrary to authority and is dangerous to the administration of criminal justice. This court [Rossini v. U. S., 6 F.(2d) 350, 353] has held directly the contrary in a case where appellant objected to evidence of the presence of intoxicants claimed to have been found in an illegal search and seizure, saying:

"The third reason is that there was other evidence which conclusively established the presence of intoxicants. Rossini testified, without objection, that he had the liquor, but that it was for his own use. One bottle, he said, was alcohol for body rubbing purposes and that the beer was 'near beer,' or was bought by him for 'near beer,' and he had no knowledge that it was intoxicating or contained an illegal excess of alcohol. As this plaintiff in error voluntarily admitted all that the officers found under the search warrant, he could not have been substantially injured by the admission of such evidence. Without substantial prejudice therefrom, he cannot urge reversal therefor."

Other cases to the same effect are White v. U. S., 16 F.(2d) 870, 872 (C. C. A. 9); Bilodeau v. U. S., 14 F.(2d) 582, 585 (C. C. A. 9); McFarland v. U. S., 11 F.(2d) 140, 141 (C. C. A. 9); Libera v. U. S., 299 F. 300, 301 (C. C. A. 9); Temperani v. U. S., 299 F. 365, 367 (C. C. A. 9); Malacrauis v. U. S., 299 F. 253, 255 (C. C. A. 4); Jones v. U. S., 296 F. 632 (C. C. A. 4); Savage v. U. S., 295 F. 686 (C. C. A. 4); Honeycutt v. U. S., 277 F. 941, 944 (C. C. A. 4).

I am convinced that this evidence was in no possible way prejudicial, and to so hold will have the practical effect of releasing a criminal, which the entire evidence proves clearly is guilty of the offense charged, and for which he was properly convicted.