## BUSTER ROGERS v. STATE.

No. A-4556. Opinion Filed Nov. 15, 1924.

(230 Pac. 279.)

(Syllabus.)

1. **Searches and Seizures—Search in Woods, Ravines, or Pastures Some Distance from Home not "Unreasonable Search or Seizure."** A search for liquor or appliances for (making whisky in woods, thickets, unfrequented ravines, or pastures, not near the place of abode, where the search would in no way invade or disturb the privacy of the home or the legitimate business of the suspected violator of the law, is not an unreasonable search or seizure, within the meaning of the Constitution.

2. **Trial—Instruction as to Effect of Evidence as to Finding Illicit Still Equipment on Defendant's Premises Held Fair to Defendant.** The instructions examined, and held fair to the defendant.

Appeal from County Court, Adair County; W. H. Martin, Judge.

Buster Rogers was convicted of manufacturing spirituous liquor, and he appeals. Affirmed.

E. B. Arnold, for plaintiff in error.

The Attorney General and G. B. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J. This is an appeal from the county court of Adair county, wherein the plaintiff in error, here referred to as the defendant, was convicted for manufacturing spirituous liquor, and his punishment assessed at a fine of $200 and 60 days in the county jail.

It appears in evidence that on August 16, 1922, Alex Tindle, sheriff, together with Bruce Evans, who was working in the sheriff's office, and W. P. Patterson, undersheriff, found a still on the premises of defendant Buster Rogers, also a deputy sheriff, Mr. Tindle then returned to town and secured a search warrant. He knew that Rogers was, at that

time, attending church at Oak Grove and after he got the search warrant he went to Oak Grove to find Rogers. Quoting from Tindle's testimony:

"Mr. Rogers was attending meeting at Oak Grove, and I had this search warrant with me, and I didn't want to go search his premises without him present, and I went by there and took him with me and told him that I had a search warrant for his premises, and wanted him along to see what was found on his premises, if anything, and we went up there, and got near the spring south of his place."

On the same subject defendant said:

"They wanted to make a little investigation and wanted me to go along, and I went, and they read the search warrant to me on the way, and we got out of the car at the land and started up to my home."

The evidence shows that about 200 yards from defendant's house, behind a bluff, the officers found a furnace with fire in it, a 10-gallon copper boiler, a copper worm. four or five barrels, one barrel about three-fourths full of beer mash, made of peaches, and a quart of moonshine whisky. This still was not far from a peach orchard belonging to defendant, and peaches were then being gathered. The officers confiscated the still and went on up to the house and searched it, and also searched the barn, but found nothing incriminating either place.

Defendant denied having any knowledge of the still being operated on his place. In his brief, defendant claims that the evidence in this case was obtained by an unlawful search and seizure; that the officers had raided the place and discovered the still, and then returned to town to procure a search warrant. The still was located before the search warrant was secured. Upon its discovery the officers returned to town and secured a valid search warrant, and served it upon

the defendant before any of the paraphernalia was confiscated or the house and barn searched, or any arrests made.

Under these circumstances, it appears that the officers' seizure was justified under the warrant, and if not, there was some evidence indicative of waiver. Moreover, a search warrant may not be required, where contraband material is found in unfrequented fields, thickets, and underbrush, not a part of the home or home premises and its immediate inclosures. Ratzell v. State, 27 Okla. Cr. 340, 228 Pac. 166.

The defendant's attempted defense in this regard is inconsistent. He complains that his private home and premises were illegally invaded, and, at the same time, says he knew nothing of the location of this still; that he was not certain it was on his land, but was in a rugged ravine adjacent to, or possibly on, the land of another.

Upon the question of the location of the still, the court instructed the jury thus:

"You are instructed that the mere fact that the furnace and barrels and other equipment were found within the inclosure or on the premises of the defendant is not within itself sufficient to warrant the conviction of this defendant, but it is a circumstance to be considered by you in connection with all the other evidence in the case, in determining the guilt of the defendant."

The instructions, as a whole, were fair to the defendant. Whether or not the defendant had himself been operating the still, or was implicated with others in its operation, were questions of fact for the jury.

MATSON, P. J., and DOYLE, J., concur.