J. D. WOLF v. THE STATE.

No. 11705. Delivered June 13, 1928.

The opinion states the case.

*A. L. Curtis,* for appellant.

*A. A. Dawson* of Canton, State's Attorney for the State.

MORROW, PRESIDING JUDGE.—The conviction is for unlawfully possessing a still for the purpose of manufacturing intoxicating liquors; punishment fixed at confinement in the penitentiary for two and one-half years.

Art. 1, Sec. 9 of the Constitution of Texas, reads as follows:

"The people shall be secure in their persons, houses, papers and possessions from all *unreasonable seizures or searches.* No warrant to search any place or to seize any person or thing shall issue without describing them as near as may be, nor without probable cause supported by oath or affirmation."

For the express purpose of giving effect to Article 1, Sec. 9 of the Constitution, the Legislature enacted Art. 4, C. C. P., 1925, the language of which is the same as Art. 1, Sec. 9 of the Constitution; also Art. 4a, C. C. P., 1925, which reads thus:

"It shall be unlawful for any person or peace officer, or State ranger, to search the private residence, actual place of habitation, place of business, person or personal possession of any person, without having first obtained a search warrant as required by law."

And Art. 4b, C. C. P., which prescribes a criminal penalty for the violation of Art. 4a, and Art. 727a, C. C. P., 1925, which reads as follows:

"No evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas or of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

Believing that there was an illicit still in the neighborhood of the dwelling-place of the appellant, the sheriff and others in his company went to the vicinity and camped for the night. In the morning they walked four miles across the country to a 300-acre tract of land leased and occupied by the appellant. His dwelling-house was situated near the Colorado River. The officers went to the Sycamore Creek, where it ran through the appellant's enclosure. At a point about three-fourths of a mile from the dwelling-house, the officers found a still, a quantity of whisky and other material and equipment for making whisky. The appellant and one, Joe Swift, were present at the still and were placed under arrest. Before finding the still,

they found a number of barrels of mash and a trailer. The barrels made a sort of enclosure. There was no fence. A path was found and also a wagon trail leading from the house at which the appellant lived and going towards the place where the still was found. The officers possessed no search warrant or warrant of arrest.

Appellant challenges the admissibility of the testimony of the officers to the facts above detailed and invokes the constitutional and statutory provisions above quoted. If the place and circumstances under which the discovery of the contraband articles were found were such as to come within the term "unreasonable search" as that term is used in the Constitution and statutes, the contention of the appellant must be sustained. Touching the meaning of the provisions of the law mentioned as relating to the facts under consideration, we have no pertinent precedents in this state. In other jurisdictions, however, there are found judicial interpretations of the meaning of the language mentioned which are deemed important as pointing to a correct solution of the legal questions here mentioned.

In the case of Brent v. Commonwealth, 240 S. W. Rep. 46, the Supreme Court of Kentucky had before it facts in substance as follows: Brent resided about four miles from Bardstown. Persons walking in the direction of Brent's residence turned into an unusual road leading to a ravine in the opposite direction from the residence. In the ravine a still was discovered in operation. After exchanging shots with the persons present, the still was destroyed. Relying upon the provisions of the Constitution quoted above, the testimony of the officers who destroyed the still touching its discovery and destruction was opposed, the appellant contending that the term "persons, houses, papers and possessions" embraced his farm and every species of property connected therewith. The court rejected this view and sanctioned the receipt of the evidence mentioned, pointing to precedents and giving reasons which would be interesting but too long to quote.

In the case of State v. Zugras, 267 S. W. Rep. 804, the Supreme Court of the State of Missouri had before it a state of facts showing that upon the appellant's farm about 150 yards from his house and concealed by brush and trees, there was found a still. A path led from the still to the appellant's house and wagon tracks went from his barn. Citing and quoting from the opinion of the Supreme Court in the Brent case, supra, the court held that the place searched was not protected by the constitutional provisions mentioned and the evidence obtained through the search was admissible.

In the case of Cotton v. Commonwealth, 254 S. W. Rep. 1061, the Supreme Court of Kentucky sanctioned the receipt of the evidence of officers obtained through a search unauthorized by a valid search warrant as to the finding of a still upon the farm of the accused some five or six hundred yards from his dwelling-house.

In Richardson v. Commonwealth, 266 S. W. Rep. 1, the result of a search made without a warrant about 300 yards from the dwelling-house of the appellant, revealed some barrels of mash for making whisky. Discussing the matter, the court used the following language:

"It is a well-established rule in this state that officers may search the lands of one suspected of a violation of the prohibition laws, provided the search does not include the building and is not within the curtilage. We have not, however, defined with exactness the space around one's dwelling and other buildings upon which a search cannot be made without a warrant to do so. In one case we held that a pond within a stone's throw of the residence was within prohibited territory and not subject to search. Childers v. Com., 198 Ky. 848, 250 S. W. 106. In another case that the yard and garden nearby were exempt from search by prohibition officers. Ingram v. Com. 200 Ky. 284, 254 S. W. 894, and Brent v. Com. 194 Ky. 504, 240 S. W. 45."

Similar announcements have been made by the Criminal Court of Appeals of Oklahoma in Rogers v. State, 230 Pac. Rep. 279; Reutlinger v. State, 234 Pac. Rep. 224; Findley v. State, 234 Pac. Rep. 227. A like question was before the Supreme Court of the United States as shown in Hester v. United States of America, 265 U. S. Rep. 57, 68 Law. Ed. 898. Officers, while concealed at a distance of 50 or 100 yards, observed the transactions which had taken place upon the farm, which led to the arrest of Hester. The court held in substance that the testimony obtained by the officers relating to their discoveries after they went on the premises was justified as incidental to a lawful arrest. However, on another phase of the case, pertinent to the present inquiry, the court said:

"The only shadow of a ground for bringing up the case is drawn from the hypothesis that the examination of the vessels took place upon Hester's father's land. As to that, it is enough to say that, apart from the justification, the special protection accorded by the 4th Amendment to the people in their 'persons, houses, papers, and effects' is not extended to the open fields. The distinction between

the latter and the house is as old as the common law." (4 Blackstone Com., 223, 225, 226.)

It is apparent from the precedents that the immunity from interference is founded upon the desire to give effect to the idea that "a man's home is his castle"; that an unreasonable search is one which trenches upon the peaceful enjoyment of the house in which he dwells or in which he works and does business, and those things connected therewith, such as gardens, out-houses, and appurtenances necessary for the domestic comfort of the dwelling-house or that in which the business is conducted. In its limitations, the immunity intended is analogous to that which applies to the curtilage of which the common law speaks, and does not render unreasonable the search of woods, fields, ravines or open spaces not so connected with the place of business or dwelling, though owned by the same individual. See State v. Shaw, 31 Me. 523; Cook v. State, 83 Ala. 62; Washington v. State, 82 Ala. 31; State v. Hecox, 83 Mo. 531; Cornelius on Search & Seizure, sec. 25, p. 88.

The land enclosed seems to have been rough and broken by hills and streams, but a small portion in the valley was in cultivation. The locality of the still was remote from the dwelling and apparently not necessary to the occupation or peaceful enjoyment of the dwelling, or in any way used in connection therewith.

Upon the facts disclosed, the opinion is expressed that the judge presiding at the trial did not err in receiving the evidence of which complaint is made.

The judgment is affirmed.

*Affirmed.*