[Crim. No. 3461.   First Dist., Div. Two.   Aug. 12, 1958.]

THE PEOPLE, Respondent, v. PAUL LAWRENCE
GRIFFIN, Appellant.

Donald M. Sea, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

DOOLING, J.—Appellant Griffin was charged jointly with one Homer Stephen in two counts of uttering and publishing two forged checks. The two were tried jointly and the jury returned a verdict of guilty against appellant on both counts.

The evidence showed that on May 10, 1957, one Herndon was working as a clerk in a liquor store in Oakland. At approximately 6:45 p. m. appellant entered this store and presented a payroll check in the amount of $63.10 drawn on Allenite Products Company's bank account with Griffin as

payee. At the trial Herndon testified that Griffin presented for identification a Social Security card and a Blue Cross card both bearing his name. (At the preliminary examination Herndon had testified that appellant offered no identification.) Appellant endorsed the check and Herndon cashed it noting on the check appellant's description.

At approximately 9:45 the same evening defendant Stephen entered the store and presented an Allenite check for $68.15 with Griffin as payee. The same identification was offered. Herndon passed a note to one of the people in the store to call the police and at this time Stephen left.

Shortly thereafter the police apprehended Griffin and Stephen near the liquor store. Officer Holmes saw appellant throw a wallet in the gutter and found a union card in this wallet bearing appellant's name.

Herndon identified appellant as the person passing the first check and identified Stephen as the one who attempted to cash the second check. When appellant was identified at this time he was in a police car 4 or 5 feet from Herndon but he said nothing. He was again identified at the trial.

Leith Allen, owner of Allenite Products Company, testified that on May 2, 1957, he discovered that several of the company's checks were missing. He identified as two of the missing checks the check cashed by appellant and a torn check found in the area where appellant was apprehended. The checks were forgeries drawn to appellant and signed without authorization.

Inspector McChesney testified that he and Inspector Olsen visited appellant at the county hospital on May 14, 1957. At this time appellant, when asked about the forged checks, stated ''I cashed two of them'' and ''I tried to cash the third one when the cops came and I ran.'' The inspector further testified that appellant asked him to go to his room and ''see my clothes are taken care of, and then call my mother and have her go down and pick them up.'' In appellant's room the inspectors found on a table in plain sight eight blank checks of the Allenite Company and a laundry slip bearing appellant's name. On the back of the slip was the name Wayer or Wager, the same name that appeared as maker on the forged checks.

Appellant denied admitting that he passed the checks and testified that he was with one Joseph Williams during the evening of May 10, 1957. Williams testified that he was with appellant from 6:30 p.m. to approximately 9 p.m. that eve-

ning. Appellant denied asking the inspector to go to his room and he denied any knowledge of the checks and that he was in the liquor store. Two witnesses who were in the liquor store on May 10 testified that they saw Stephen but neither could recall seeing appellant.

■ A question is raised whether the notice of appeal was filed in time. The last day to file was September 26, 1957. The notice of appeal was put in the hands of a person assigned by the prison authorities on September 25. The envelope in which it was mailed at Vacaville was postmarked September 26. It was not filed until September 30 and we have the affidavit of a deputy county clerk that would indicate that it was not received before the date of filing. We can take judicial notice that if mailed at Vacaville on September 25 in normal course it might be expected to be received in Oakland some time on September 26. Under *People* v. *Slobodion,* 30 Cal.2d 362 [181 P.2d 868], we are justified in holding that the notice of appeal was constructively filed in time.

■ Appellant claims that the blank checks and laundry list found in his room were seized as the result of an illegal search. The officer testified that appellant requested him to go to his room and although appellant denied this the resolution of this conflicting testimony was the proper function of the trial court. That court accepted the officer's version. Once in the room the checks and laundry list were in plain sight. The officer, being lawfully in appellant's room, although he could not make a search beyond the scope of the appellant's permission, was not required to close his eyes to what appeared openly obvious to his observation. (*People* v. *Roberts,* 47 Cal. 2d 374, 379-380 [303 P.2d 721].)

■ Appellant argues that the resolution of the conflicting evidence to determine whether appellant requested the officer to go to his room should have been left to the jury. The cases are clear that the determination of the legality of a search should be made by the trial court and not by the jury. (*People* v. *Gorg,* 45 Cal.2d 776, 780-781 [291 P.2d 469]; *People* v. *Dewson,* 150 Cal.App.2d 119, 126-127 [310 P.2d 162]; *People* v. *Lawrence,* 149 Cal.App.2d 435, 446-447 [308 P.2d 821].)

Appellant claims that his guilt of attempting to pass the second check was not proved. The circumstantial evidence of his complicity in the second offense was not merely sufficient but almost conclusive. There is nothing in *People* v. *Henderson,* 79 Cal.App.2d 94 [179 P.2d 406], which militates against this conclusion.

716

■ We cannot find any error in the instructions on direct and indirect evidence. They followed substantially the form of "Instruction No. 24 Alternate" found in California Jury Instructions—Criminal, 1953 Pocket Parts, and sufficiently informed the jury on the subject.

■ The court instructed on the theory of conspiracy. Appellant complains that while the words "overt act" were used in these instructions they were not defined. Each of the offenses of which appellant was found guilty was sufficient to satisfy the definition of "overt act" and we cannot find any prejudice in the failure to spell out a definition which if given could not have changed the result.

■ The court gave a somewhat confusing instruction on alibi: "If . . . you find that a conspiracy did not exist, then in that case . . . the instruction on alibi will apply." The jury must have found that the evidence that appellant passed the one check and his codefendant tendered the other was true and we cannot believe, despite the somewhat unfortunate language in which the quoted instruction was cast, that they would have made these findings if they had given credence to the alibi evidence.

■ The appellant denied making a confession. There was no evidence tendered to support a finding that if the confession was made it was not voluntary. There was therefore no reason to instruct the jury on its right to determine whether the confession was freely and voluntarily made.

■ Complaint is made of the limitation on the cross-examination of the officer who testified to the confession. At the time appellant was in the psychiatric ward of the county hospital. The witness had testified that both prisoners who were suspected of mental illness and those who were unruly were placed in this ward. Objection was sustained to the question: "Ordinarily in the City Jail if somebody is just unruly, you have a place where you put them in the City Jail, don't you?" Subsequent cross-examination developed that this witness was not the one who had appellant transferred to the hospital and did not know the reason for his transfer. If there was any substantial evidence that appellant was mentally affected when he made his confession we must assume appellant would have produced it. The appellant himself later testified about his conversation with this officer at the hospital and made no contention that his mind was not clear at the time. We can find no prejudice to appellant in the incident complained of.

It was error to fail to instruct the jury that evidence of oral admissions ought to be viewed with caution (Code Civ. Proc., § 2061, subd. (4); *People* v. *Cornett,* 33 Cal.2d 33, 39-40 [198 P.2d 877]), but in view of the strength of the entire case against appellant we cannot find that the failure to give this instruction was prejudicial. (*People* v. *Riley,* 35 Cal.2d 279, 286 [217 P.2d 625].)

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.

The petitions of appellant and of respondent for a hearing by the Supreme Court were denied October 10, 1958.