[Crim. No. 7209. Second Dist., Div. Two. Dec. 29, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD RICHARD JACKSON, Defendant and Appellant.

Warren L. Ettinger, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—Defendant was charged in separate informations filed on October 22, 1959, with a sale of marijuana on February 18, 1959 (Health & Saf. Code, § 11500), and possession of marijuana on September 18, 1959 (id., § 11530). In connection with each it was alleged that defendant had been previously convicted for violation of section 11714, Health and Safety Code, selling to or through a minor, etc. The cases were consolidated for trial and before selection of a jury defendant admitted the prior conviction. Defendant was found guilty on both charges and appeals from the judgment and from an order denying his motion for new trial.

The only errors asserted upon appeal relate to the charge of possession. Appellant claims there was an illegal search and seizure and insufficient evidence to prove possession.

On February 18, 1959, Deputy Sheriff Donald R. Tizenor, working undercover, had gone to appellant's home at 2702 Lantana, Compton, Los Angeles County, with an informant and had consummated the purchase of marijuana from appellant, the subject of the first charge. No arrest was made at that time. Thereafter Deputy Tizenor made several attempts over the telephone to arrange for additional purchases of narcotics from appellant but no further sale was completed.

Prior to September 18, 1959, Deputy Velasquez had been informed by Sergeant Scofield of the Compton Police Department that appellant was placing his narcotics back of the chickencoop among the trash and that there was a lot of traffic in and out of that location. On September 18 Deputies Tizenor and Velasquez, accompanied by five other officers, went to 2702 Lantana Street, arriving between 3 and 4 p.m. They had a warrant for the arrest of appellant based upon the aforesaid sale of February 18. There was no search warrant. Deputies Tizenor, Berman, Renteria, and Sergeant Scofield of the Compton Police Department entered the house through the front door. Deputy Velasquez, with Deputy Nesmith and Sergeant Greenlee, arrived upon the premises from the alley to the rear and saw appellant in the back yard talking to a male Caucasian. Velasquez told appellant that

he had a warrant for his arrest, appellant was handcuffed and asked to accompany the officer inside the house. Velasquez and three other officers then took appellant outside into the backyard and began a search on both sides of the chicken coop.

In a trash pile on the westerly or far side of the chicken coop there were numerous bags of the grocery store type among beer cans and other types of garbage. It appeared to Velasquez to be a "joint trash pile," he could not recall seeing any other trash pile near the chicken coop. He looked into several of the bags and then picked up the largest of these paper bags, looked into it and said "This is what [we] are looking for" or words to that effect. The contents proved to be a quantity of marijuana and marijuana cigarettes. It was found about a foot from the chickencoop, but Velasquez said he had no way of knowing whether or not this was on the neighbor's property. Later, Velasquez checked appellant's car parked in the driveway and retrieved from the floorboards, on the driver's side, what appeared to be three marijuana seeds and a partially smoked marijuana cigarette. These substances were exposed to plain view as he looked into the car. The house as well as the garage, where appellant conducted a television and radio repair shop, were also searched.

Approximately simultaneously with the entry of the deputies into the back yard, Deputy Tizenor entered the house through the front door. He testified that as he walked in he saw a bag lying open on top of a radio to the left of the door. The bag "wasn't closed, it was just kind of leaning there" and in it he observed some marijuana seeds and debris.

Some of the persons who were in the living room were taken into custody because marijuana was found on their persons. During the time the officers were at the house, which according to appellant was until about 7 p. m., a number of other people arrived who were searched and placed under arrest outside the house; one person had 11 marijuana cigarettes on him.

Appellant has at all times denied knowledge of any of the narcotics found and a search of his person revealed nothing of a criminal nature. He testified that the paper bag found near the chicken coop was taken from a trash pile which was on his neighbor's land to the west of a fence which runs north and south alongside the chicken coop and forms the boundary between the two lots; that this trash pile was used by his neighbor and not by appellant; that he has his own trash pile at the end of the chicken coop. Beyond the southerly portion

of his property, appellant stated that it was "just all open field" and "country area."

Appellant does not question the validity of the arrest for the sale pursuant to the warrant therefor. He contends that the search which was made was not incident to that arrest. The argument is twofold: (1) That the arrest which took place in the backyard did not justify entry into and search of the house; and (2) that "since the act upon which the warrant was based óccurred seven months prior to the date of arrest, and since no other buys had been made by Deputy Tizenor during this period, the entry into the house and search thereof was not incident to the arrest." Proper objections were made by defense counsel throughout the trial; all motions to strike and motions to suppress were denied, and objections to the receipt in evidence of the narcotics were overruled.

In support of his first contention,—that the arrest in the backyard did not justify a search of the house, appellant relies upon *Hernandez* v. *Superior Court*, 143 Cal.App.2d 20 [299 P.2d 678], *Agnello* v. *United States*, 269 U.S. 20 [46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409], and *People* v. *Gorg*, 45 Cal.2d 776 [291 P.2d 469]. ■■■ If the searches were otherwise connected with the arrest under warrant, the fact that the arrest was made in the backyard would not prohibit a search of appellant's house located upon the premises and under his control. The search was incidental in point of time and place, and was a "continuous transaction." (See *People* v. *Aleria*, 193 Cal.App.2d 352, 357-358 [14 Cal.Rptr. 162], in which the above-cited cases are discussed.)

■■■ However, the searches were not otherwise connected with the specific offense for which the arrest was made. The sale was completed on February 18, 1959, and the evidence of that crime was already in the possession of the police. Any narcotics discovered seven months later would not be instrumentalities or evidence of the particular crime for which the arrest was made. The motivation could not have been the hope of obtaining evidence of that offense and, in the absence of probable cause for arrest upon an additional charge, the searches were unauthorized. Rather, they were general and exploratory and conducted for the sole purpose of discovering incriminating evidence—the type of search that is condemned in *People* v. *Mills*, 148 Cal.App.2d 392, 399-402 [306 P.2d 1005], and in *People* v. *Schaumloffel*, 53 Cal.2d 96, 100-101 [346 P.2d 393].

No real attempt was made by the prosecution to establish probable cause for an arrest without a warrant. The question of probable cause as such was not mentioned by either party during the trial, and no argument on the subject has been presented upon this appeal.

We deem it unnecessary, however, to make a determination upon the question of probable cause because the narcotics received in evidence were not the result of an illegal search. The mere observation of that which is in open view does not constitute a search. (*People* v. *Sterling,* 154 Cal. App.2d 401, 405 [316 P.2d 405] ; *People* v. *Spicer,* 163 Cal. App.2d 678, 683 [329 P.2d 917].) It is not, nor can it be, claimed that the entry into the house by Deputy Tizenor was unlawful. He had arrived upon the premises with the other deputies for the purpose of making an arrest pursuant to the warrant. And, although his entry for this purpose did not justify a general search in the circumstances presented here, the officer, once in the room, did not have to blind himself to what was in plain sight simply because it was disconnected with the purpose for which he entered. (*People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721] ; *People* v. *Griffin,* 162 Cal.App.2d 712, 715 [328 P.2d 502] ; *People* v. *Littlejohn,* 148 Cal.App.2d 786, 791-792 [307 P.2d 425].) Upon entering the room, Deputy Tizenor observed a bag sitting on top of the radio, the bag was open and he saw a small quantity of seeds and small leaves. There was no "search" so far as these narcotics were concerned. The same is true of the substances found on the floor boards of the car, for observing the items through the windows of a parked car does not constitute a search. (*People* v. *Wright,* 153 Cal.App.2d 35, 38 [313 P.2d 868] ; *People* v. *Hyde,* 51 Cal.2d 152, 157 [331 P.2d 42].)

Further, "[t]he constitutional guaranties protect the individual only from searches and seizures that are 'unreasonable,' which may be taken generally to mean 'unlawful,' and the law authorizes many types of reasonable inspections, examinations, investigations, searches, and seizures without warrant, either from practical considerations of convenience and common sense or by statutes, rules, or regulations adopted in the exercise of the state's police power." (44 Cal.Jur.2d § 22, pp. 303-304.) It was stated by Mr. Justice Holmes in *Hester* v. *United States,* 265 U.S. 57, 59 [44 S.Ct. 445, 68 L.Ed. 898] that "the special protection accorded by the 4th Amendment to the people in their 'persons, houses, papers, and effects' is

704

not extended to the open fields. The distinction between the latter and the house is as old as the common law.'' In accordance with this rule it has been held that the special protection accorded by the Fourteenth Amendment does not extend to ''enclosed or unenclosed grounds or open fields'' around a house (*Martin* v. *United States* (5 Cir.) 155 F.2d 503, 505); or ''to the open driveways on each side of the building, or the open space in the rear of the building'' (*United States* v. *Rogato* (D.C. M.D. Pa.) 39 F.2d 171, 175). To the same effect are *Koth* v. *United States* (9 Cir.) 16 F.2d 59, 61; *Care* v. *United States* (10 Cir.) 231 F.2d 22, 25; *People* v. *Grundeis,* 413 Ill. 145 [108 N.E.2d 483, 486-487]; *Wolf* v. *State,* 110 Tex.Crim.Rep. 124 [9 S.W.2d 350, 351]. See also *People* v. *Robles,* 183 Cal.App.2d 212, 215 [6 Cal. Rptr. 748] (yard next door); *People* v. *Montes,* 146 Cal.App. 2d 530, 533 [303 P.2d 1064] (driveway); *People* v. *Bly,* 191 Cal.App.2d 352, 357 [12 Cal.Rptr. 542] (trash can); *People* v. *Lawton,* 150 Cal.App.2d 431, 433-434 [309 P.2d 862] (back yard of adjacent house); *People* v. *Hurst,* 183 Cal.App.2d 379, 385-386 [6 Cal.Rptr. 483] (under the house). ▆▆▆ We therefore conclude that the claim of unlawful search is not well grounded.

The remaining question is whether there is sufficient evidence to support the conviction of possession. Appellant contends that there is no evidence that he had knowledge of the presence of any of the narcotics.

In considering this question we must accept as established all evidence, inferences and intendments favorable to respondent's case and before we would be authorized to set aside the judgment and order on the ground of insufficiency of the evidence, ''it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below.'' (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

▆▆▆ It is well settled that ''to establish unlawful possession of narcotics it must be shown that the accused exercised dominion and control over the drug with knowledge of its presence and narcotic character.'' (*People* v. *Redrick,* 55 Cal. 2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].) ▆▆▆ ''These elements may be established by circumstantial evidence and reasonable inferences drawn therefrom. [Citation.] The narcotics need not be found on the person of the defendant; it is sufficient if they are deposited in a place under the possession and control of the accused. Exclusive possession of the

premises is not necessary nor is physical possession of the drug of the essence. [Citation.]'' (*People* v. *Hurst,* 183 Cal.App. 2d 379, 387 [6 Cal.Rptr. 483].) ██ However, "proof of opportunity of access to a place where narcotics are found, without more, will not support a finding of unlawful possession." (*People* v. *Redrick, supra,* p. 285.)

██ The narcotics were found in appellant's house, in appellant's car, and in a trash pile adjacent to his chicken coop. But he at all times denied knowledge of the presence thereof; there were no admissions, no contradictory statements or explanations and no conduct directly connecting him with these narcotics. Nothing was found upon his person or among his personal belongings. Appellant testified that there resided at his home, in addition to himself and his wife, two teenage sons and an infant son, appellant's cousin and his wife. That friends of the teenage sons had free access to the house; that the boys had parties every week, and large numbers of people frequently were at the house and also in the back yard. That persons who came relative to radio and television repair sometimes went to the garage and sometimes came to the house. At the time of the arrest one Joe Pollard was in the den adjoining the living room playing records. He had arrived about 20 minutes earlier, had let himself in, and was waiting to see appellant's son. His girl friend and a couple of other people were sitting in the living room listening to the records. Appellant also testified that the sons occasionally drove his car, and that one of the boys had driven it on the day of the arrest.

Upon the theory that the trash pile was accessible to many people, that the room where the bag was found on the radio was not occupied by defendant but by five or six other people, and that the car had been driven by others, appellant contends that *People* v. *Antista,* 129 Cal.App.2d 47 [276 P.2d 177] and *People* v. *Fernandez,* 172 Cal.App.2d 747 [342 P.2d 309] are applicable. The court states in *People* v. *Antista,* page 50: "Guilty knowledge is not presumed. It has to be established by evidence. In a sense it can be said that one has possession of everything that is contained in the home or apartment in which he lives but this is not the sense in which 'possession' is used in the penal statute. In all the cases we have examined in which conviction was upheld there was some incriminating statement or circumstance in addition to the presence of marihuana or narcotics which indicated knowledge of the defendant of its presence and his control of it."

There, the evidence consisted solely of the discovery of marijuana in defendant's apartment. The usual additional incriminating circumstances found to be lacking there are also lacking in the instant case, —with one exception. In *Antista* there was no evidence that defendant had had any previous connection with narcotics. Not so here.

Likewise, with regard to the narcotics found in the car, the usual attendant circumstances upon which a finding of knowledge of presence has been sustained, are lacking; i.e., exclusive occupancy, present use or recent physical possession, admissions or furtive conduct of some kind.

In *People* v. *Redrick, supra,* the court makes a review of cases applying the above rule, i.e., that proof of opportunity of access, without more, will not support a finding of unlawful possession. These cases all involve, as in the instant case, nonexclusive dominion, accessibility to others. Convictions of unlawful possession were reversed because there were no circumstances showing a consciousness of guilt other than the presence of the narcotics. The court then states, page 287: "As might be expected, no sharp line can be drawn to distinguish the congeries of facts which will and that which will not constitute sufficient evidence of a defendant's knowledge of the presence of a narcotic in a place to which he had access, but not exclusive access, and over which he had some control, but not exclusive control. The cases next cited illustrate evidential factors which, added to nonexclusive dominion, will support a finding of knowing possession." The cited cases show that such factors may be the finding of the drug among defendant's personal effects; furtive conduct; dubious or false explanations; evasive testimony, and admissions—none of which are present here.

 In the instant case, however, the evidence concerning the February 18th sale was before the jury. Deputy Tizenor testified that after this sale, in one of his telephone conversations with appellant, and before the arrest, appellant told him "to come out to the house, he had some weed. And I told him I wanted . . . cocaine. He told me I would have to call him back. . . . And subsequently, when I tried to contact Mr. Jackson, I was informed that he was in custody on a possession of marijuana from the Los Angeles Police Department. . . ." [This evidence was elicited upon cross-examination by defense counsel.] Appellant admitted in open court that he was convicted on April 8, 1958, of the felony, furnish-

ing narcotics to a minor, and that on November 19, 1959, he was convicted of possession of marijuana.[1]

Such is the evidence, in addition to the presence of the narcotics in the various places, from which appellant's knowledge may be inferred, —it spells *previous narcotics activities.*

Clearly a prior narcotics conviction is a circumstance to be considered on the subject of guilty knowledge. (See *People* v. *Robarge*, 151 Cal.App.2d 660, 668 [312 P.2d 70]; *People* v. *Antista, supra,* pp. 50-51; *People* v. *Denne*, 141 Cal. App.2d 499, 511 [297 P.2d 451]; *People* v. *Torres*, 98 Cal. App.2d 189, 192 [219 P.2d 480]; *People* v. *Rodriguez*, 151 Cal.App.2d 598, 601 [312 P.2d 272].)

The evidence in this case is persuasive to the effect that defendant and his associates were engaged in a persistent and continuous course of illegal narcotics activities and we hold that there was enough to warrant the jury and the trial judge in finding that defendant did have possession of the narcotics in question and knowledge of their illegal status.

Judgment and order denying new trial affirmed.

Fox, P. J., and Herndon, J., concurred.

---

[1]See *People* v. *Jackson*, 191 Cal.App.2d 296 [12 Cal.Rptr. 748].